# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                                             )<br>)<br>ALI RATIB DAHAM,                         )<br>)<br>                 **Defendant**     ) | **Crim. No. 2:17-cr-60-DBH-01** |

## ORDER ON MOTION TO REDUCE SENTENCE

### Facts and Procedural History

I sentenced Ali Ratib Daham on June 18, 2018, to three years in federal prison for criminal conduct centered on welfare and food stamps fraud and money laundering. Judgment (ECF No. 163). Daham is now incarcerated at FCI Fort Dix. His projected release date is April 13, 2021, a little over two months from now. Gov't's Obj. at 1 (ECF No. 189).

Daham has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).[1] Unlike most defendants, his motion is not focused on his own vulnerability to the coronavirus pandemic in prison. Instead, it is focused on his family's needs.

Ali Daham's younger brother and co-defendant, Abdulkareem Daham—for whose involvement in the fraud Ali Daham was responsible—served the two-year sentence I imposed on him and was released about a year ago, on February 3,

---

[1] The government concedes that he has met the statutory exhaustion requirement. Gov't's Obj. at 6 (ECF No. 189).

2020.  Thus, Abdulkareem was able to be of service to the Daham family during the early months of the pandemic; he assisted with the care of the brothers' parents and also provided guidance to Ali Daham's children.[2]  On July 1, 2020, while intoxicated with friends, he shot himself through the head with a revolver he thought was unloaded.  Notice of Death (ECF No. 177).

Daham's mother, age 60, is severely obese (BMI 43.26); his father, age 67, has high blood pressure.  According to the CDC, his mother's severe obesity increases her risk of severe illness from COVID-19.  CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).  His father's hypertension might increase the risk.  Id.  Neither parent can work.  Ali Daham's spouse has serious back problems and is unable to provide care to the parents.  Daham's spouse does not speak English; the parents have limited English.  They all came to the United States after leaving Iraq as refugees.  Daham was always the leader of the two households.  Daham and his spouse have four children, ages 11 to 17.  Their behavior is adversely affected by their father's absence.

The government minimizes the family's caretaking needs, ignoring their language limitations, their refugee history,[3] and familial roles in their traditions.  As I have said, the minor children's behaviors are deteriorating with their father's

---

[2] A sister (a married college student with two children of her own) has been prevented by her husband from caring for her parents.  Two other siblings remain in Iraq, where the family lived before becoming refugees and eventually coming to the United States.  PSR ¶¶ 41, 43; Def.'s Ex. 1 at 5 (ECF No. 184).
[3] While living in Iraq, Ali Daham was kidnapped, held for ransom, and tortured.  He and his family fled to Jordan and then Syria before settling in the United States.  PSR ¶ 43.

2

absence and their mother's inability to deal with American cultural norms and language. The teenaged son has taken up smoking and drinking, disrespects his mother, and has wrecked his mother's car.

Ali Daham has two pending offers of employment if he is released. He proposes to live with his wife and children in the same residence where he lived before he went to prison. Because his parents live in a separate unit in the same building, he could care for them. In April 2020, the Probation Office for the District of Maine did a standard pre-release home inspection and found the location appropriate.[4]

## ANALYSIS

Despite all the cases to the contrary, the government persists in maintaining that a judge considering a motion for compassionate release must follow the policy statement in Guideline 1B1.13, a policy statement written for BOP motions. Gov't's Obj. at 4 n.2, 5 n.3.[5] But the First Circuit has approved looking beyond the policy statement, see United States v. Fox, No. 19-1785 (1st Cir. July 23, 2020) ("the district court did consider other relevant circumstances not specifically enumerated in the guidelines"), aff'g No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019), and four other Circuits have held outright that the policy statement does not apply to motions by defendants, see

---

[4] See Def.'s Mot. at 3 (ECF No. 184). I confirmed the visit and the result with the U.S. Probation Officer on January 25, 2021.

[5] For example, in recognizing extraordinary and compelling reasons for family circumstances, the policy statement considers only caregiving for minor children and a spouse, not for aged or infirm parents. § 1B1.13 cmt. n.1(C). The government cites that as a reason for denying this motion. Gov't's Obj. at 6. But I agree with Judge Young that in some circumstances care for an ailing parent can justify compassionate release. See United States v. Bucci, 409 F. Supp. 3d 1 (D. Mass. 2019).

United States v. McCoy, 981 F.3d 271, 281-83 (4th Cir. 2020); United States v. Jones, 980 F.3d 1098, 1108-11 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020); United States v. Brooker, 976 F.3d 228, 235-37 (2d Cir. 2020).  I follow those decisions and turn directly to the statutory criteria.

Under 18 U.S.C. § 3582(c)(1)(A), I must consider the factors of section 3553(a) "to the extent that they are applicable" and determine if "extraordinary and compelling reasons warrant . . . a reduction."

In considering the 3553(a) factors, I conclude that the following are most applicable to this defendant.  Given the proportion of his sentence the defendant has served (only 2 months left), the defendant's served sentence "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, and . . . provide[s] just punishment for the offense"; it "afford[s] adequate deterrence to criminal conduct"; and it "protect[s] the public from further crimes of the defendant" (on this factor, the government "concedes that the defendant does not present a great risk of danger to the community,"[6] Gov't's Obj. at 9).  Daham presents extraordinary and compelling reasons for his early release—his brother's tragic death, his parents' infirmities and difficulties in dealing with health care needs, and his children's deteriorating well-being, in other words a family collapse.  Considering "the nature and circumstances of the offense and the history and characteristics of the defendant," I conclude that he should be released *now* and begin his period of supervised release.  Indeed, one might legitimately wonder why the government is arguing over the remaining two months of his sentence.

---

[6] The government also says that during his imprisonment Daham had only one disciplinary infraction involving possession of a cellphone.  Gov't's Obj. at 9.

4

The defendant's plan for release is satisfactory, given Probation's approval of his residence in 2020, its proximity to his parents who need care, and his job offers.

I therefore **GRANT** the motion for compassionate release. The defendant's sentence is reduced to time served, BOP is **DIRECTED** to follow its quarantine/release protocol, and the defendant is **ORDERED** released immediately thereafter. Upon release, he shall begin his period of supervised release with all the terms and conditions previously imposed.

**SO ORDERED.**

**DATED THIS 27TH DAY OF JANUARY, 2021**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**